HERDER HALLMARK CONSULTANTS, INC., Plaintiff-
Respondent,

v.

REGNIER CONSULTING GROUP, INC., and Steven J.
Regnier, Defendants-Appellants.†

Court of Appeals

*No. 03–1917. Submitted on briefs February 11, 2004.—Decided
June 10, 2004.*

2004 WI App 134

(Also reported in 685 N.W.2d 564.)

† Petition to review denied 9-1-04.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Gary L. Dreier* of *First Law Group, S.C.*, Stevens Point.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gerald M. O'Brien* of *Anderson, O'Brien, Bertz, Skrenes & Golla*, Stevens Point.

Before Deininger, P.J., Dykman and Higginbotham, JJ.

¶ 1. DYKMAN, J. Regnier Consulting Group, Inc. (Regnier, Inc.) and Steven Regnier appeal from an order granting partial summary judgment to Herder Hallmark Consultants, Inc. (Herder, Inc.) declaring that there was an express contract between Herder, Inc. and Regnier. We granted Regnier, Inc. and Regnier's petition for leave to appeal to clarify additional proceedings in this matter. Regnier and Regnier, Inc. assert that the trial court erred by concluding that an implied purchase

agreement existed between the parties. They argue that indefiniteness voids any agreement since the parties did not agree upon an essential term, the sale price. We conclude that the parties' conduct evidences a contract for the sale of assets and affirm.

## FACTS

¶ 2. Herder, Inc. was an actuarial business. John Herder owned all the stock in Herder, Inc. Herder, Inc. employed Regnier as an actuary. Herder informed Regnier that he planned to terminate his business on July 1, 2001. Herder and Regnier discussed the sale of Herder, Inc.'s assets to Regnier. On June 30, 2001, Regnier sent an announcement to Herder, Inc.'s clients that read: "Herder Hallmark Consultants, Inc. is Pleased to Announce A Change in the Management of the Firm." It stated that "[e]ffective July 1, 2001, STEVEN J. REGNIER will be taking over the consulting operation." Herder told some clients that Regnier would be willing to provide actuarial services for them.

¶ 3. On July 5, 2001, Regnier formed Regnier, Inc., which is an actuarial business providing services similar to those provided by Herder, Inc. After Herder, Inc. closed on July 1st, Regnier, Inc. hired all of Herder, Inc.'s employees and took all of Herder, Inc.'s files and customer lists, except for a small number that stayed with Herder. It used Herder, Inc.'s computers, furniture, and trade secrets, among other assets. It also rented and occupied the same office location that Herder, Inc. had occupied.

¶ 4. Despite numerous proposals for calculating a fair purchase price, the parties did not reach an agreement about the sale price of the assets. Correspondence between the parties' attorneys in November 2001 establishes that the parties were considering using an inde-

pendent appraiser selected by each of the parties' designated accountants to determine the sale price. However, in June 2002, Regnier decided that he would not be bound by a third party's valuation of the business.

¶ 5. Eventually, Herder, Inc. sued Regnier, Inc. and Regnier for breach of contract, among other things. The parties dispute whether they formed a contract whereby Regnier would purchase Herder, Inc.'s assets for a reasonable price. At trial, both parties moved for partial summary judgment. The trial court awarded Herder, Inc. "summary judgment declaring that there is an express agreement between [Herder, Inc.] and defendant Regnier regarding the sale of [Herder, Inc.'s] business to Regnier as of 7/1/01, and declaring that there is an implied agreement between the parties that the sale be for a fair price." It left the sale price to be determined by a jury at trial. Regnier, Inc. and Regnier appeal.

## DISCUSSION

¶ 6. We review a trial court's decision on a motion for summary judgment de novo, applying the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2001–02).[1] For the purposes of partial summary judgment, the parties only dispute whether vagueness or indefiniteness void any agreement between the parties because they did not agree on a purchase price. We may decide as a matter of law whether the essential terms of

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

the contract were definite. *Mgmt. Comp. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 178, 557 N.W.2d 67 (1996).

¶ 7. Regnier, Inc. and Regnier contend a contract cannot exist when the parties have not agreed upon an essential term such as the sale price. Citing *Household Utilities, Inc. v. Andrews, Co., Inc.*, 71 Wis. 2d 17, 28, 236 N.W.2d 663 (1976), they argue that Herder, Inc. must prove a meeting of the minds as to the purchase price before Regnier, Inc. or Regnier can be held liable for breaching a contract to pay for Herder, Inc.'s assets. They contend that the alleged agreement between the parties is so indefinite and vague that it cannot constitute a contract. They argue that Herder, Inc.'s remedy lies in *quantum meruit.*

¶ 8. We agree that ordinarily a contract must be definite and certain as to its basic terms and requirements to be enforceable. *Petersen v. Pilgrim Vill.*, 256 Wis. 621, 624, 42 N.W.2d 273 (1950). Certainty of contract terms concerns whether the parties had a meeting of the minds. *Dunlop v. Laitsch*, 16 Wis. 2d 36, 42, 113 N.W.2d 551 (1962). Wisconsin has recognized the traditional notion that definiteness requires mutual assent via a "meeting of the minds." *Mgmt. Comp. Servs., Inc.*, 206 Wis. 2d at 178–79 (citations omitted). The supreme court has clarified that "a literal 'meeting of the minds' is not required." *Id.* at 180–81. *See also Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶ 20, 266 Wis. 2d 124, 667 N.W.2d 751, *review denied*, 2003 WI 140, 266 Wis. 2d 62, 671 N.W.2d 849 (Wis. Oct. 27, 2003) (No. 02–1291) ("However, it is well established that an actual meeting of the minds is not a prerequisite to an enforceable contract."). Instead, we give effect to the parties' intent to

contract if such intent is discernible from their conduct or the contract language:

> If parties evidently intended to enter a contract, the trier of fact should not frustrate their intentions, but rather should attach a "sufficiently definite meaning" to the contract language if possible. We have previously decided: "Even though the parties have expressed an agreement in terms so vague and indefinite as to be incapable of interpretation with a reasonable degree of certainty, they may cure this defect by their subsequent conduct and by their own practical interpretation." *Nelson v. Farmers Mut. Auto. Ins. Co.*, 4 Wis. 2d 36, 51, 90 N.W.2d 123 (1958). Therefore, if the jury can determine the parties' intentions, "indefiniteness disappears as a reason for refusing enforcement." As Judge (later Justice) Cardozo has stated, "Indefiniteness must reach the point where construction becomes futile."

*Mgmt. Comp. Servs., Inc.*, 206 Wis. 2d at 179–80 (citations omitted).

¶ 9. Wisconsin's approach to contract formation accords with *Corbin on Contracts:*

> In the process of negotiating an agreement, a term that is frequently left indefinite and to be settled by future agreement, or by some other specified method, is the price in money . . . . If the parties provide a practicable method for determining this price or compensation there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract. The same is true if they agree upon payment of a "reasonable" price or compensation. There are cases, however, in which it is clear that the parties have not expressly or implicitly agreed upon a "reasonable price," and also have not prescribed a practicable method of determination. Where this is true, the agreement is too indefinite and uncertain for enforcement.

> Such cases should be rare. If the agreement is a commercial one it can be presumed that the parties as actors in the market intend a market or some other reasonable price.

1 CORBIN ON CONTRACTS: *Formation of Contracts,* § 4.3 (Joseph M. Perillo ed., rev. ed. 1993) (citations omitted).

¶ 10. Thus, we may discern a contract where the parties conduct evidences sufficient definiteness of an intent to contract, even if an essential term is left vague or indefinite.

¶ 11. Here, the parties have not agreed upon the price of the assets transferred to Regnier, Inc. or a method for determining a price. But neither party disputes that after July 1, 2001, Regnier, Inc. used Herder, Inc.'s office space, employees, client lists, furniture, computers, goodwill, trade secrets, and other assets. Nobody disputes that neither Regnier, Inc. nor Regnier have paid Herder, Inc. for any of these assets. In his deposition, Regnier admitted that these assets were valuable to him.

¶ 12. In his affidavit in support of Herder, Inc.'s motion for summary judgment, Herder averred that he found two documents on the hard drive of Regnier's personal computer. He attached the documents as exhibits to his affidavit. The first document reads, in pertinent part: "Mr. Regnier is the President and owner of Regnier Consulting Group, Inc. Mr. Regnier purchased the actuarial consulting business of Herder Hallmark Consultants, Inc. July 1, 2001." The second document concludes with "Mr. Regnier purchased Herder Hallmark Consultants, Inc. on July 1, 2001."

¶ 13. In response, Regnier averred that "the letters referred to [in Herder's affidavit] . . . did not state a purchase price or a formula to determine the purchase price; these were matters of negotiations, along with other important items as of the time the subject letters were prepared by me." Both Regnier, Inc. and Regnier argue that these documents only evidence continued negotiations, not a contract. They contend that if a contract is formed for "fair value" then contract law would be subsumed into the law of unjust enrichment.

¶ 14. We conclude that there is no genuine issue of material fact as to whether Regnier accepted Herder, Inc.'s assets and whether those assets were valuable to him. Regnier stated that he purchased Herder, Inc. in the letters found on his computer. Neither Regnier, Inc. nor Regnier averred any evidence that refutes the letters. Regnier's affidavit merely notes that the agreement lacked a definite sale price.

¶ 15. We also conclude that the conduct of the parties cures any indefiniteness as to the price of the assets. Under *Management Computer Services, Inc.*, we "attach a 'sufficiently definite meaning' to the contract language if possible." *Mgmt. Comp. Servs., Inc.*, 206 Wis. 2d at 179 (citation omitted). Specifically, Regnier, Inc.'s acceptance of numerous, valuable assets belonging to Herder, Inc. evidences that the parties intended Regnier, Inc. to purchase some, if not all, of Herder, Inc.'s assets when Herder, Inc. closed its business. Moreover, all of the parties' negotiations attempted to reach a fair contract price. Neither Regnier, Inc. nor Mr. Regnier has submitted any evidence that rebuts the presumption that "parties as actors in the market intend a market or some other reasonable price." CORBIN, *supra,* ¶ 9. The lack of an agreed upon sale price does not void the parties' contract. We reject the

contention that Herder, Inc. needed to show that the parties agreed upon the precise value of the assets for a contract to be formed.

¶ 16. Finally, Regnier, Inc. and Regnier assert that the trial court erred by considering settlement negotiations in concluding that the implied agreement existed, and by concluding that an implied agreement was not timely pled by Herder, Inc. But this argument is undeveloped. Ordinarily, we will not address undeveloped arguments and decline to do so here. *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992). Our review of the complaint establishes that Herder, Inc. pled a breach of contract. Accordingly, the cause of action was timely pled.

*By the Court.*—Order affirmed.