KLOPPENBURG, J.[1]
¶1 The circuit court entered an order terminating the appellant A.V.'s parental rights to his daughter, M.D. (the child), following a "grounds" hearing at which the court determined that the grounds for terminating A.V.'s parental rights had been established. A.V. makes two arguments on appeal. First, A.V. argues that he received ineffective assistance of counsel at the grounds hearing and that, as a result, this case must be remanded for the circuit court to conduct a new grounds hearing. Second, A.V. argues that the court erroneously entered the termination order without first holding a dispositional hearing on the question of whether terminating his parental rights serves the child's best interests and that, as a result, the order must be reversed and this case remanded to the circuit court for it to conduct a dispositional hearing.
¶2 As to the first issue, A.V. fails to show that he received ineffective assistance of counsel at the grounds hearing. As to the second issue, the respondent S.D. concedes that the circuit court improperly terminated A.V.'s parental rights without first holding a dispositional hearing on the question of the child's best interests. Accordingly, I reverse the order terminating A.V.'s parental rights and remand to the circuit court for it to conduct a dispositional hearing.
BACKGROUND
¶3 A.V. and S.D. married in 2012 and separated in 2013. In early 2014, S.D moved in with her then future, now current husband, A.D. (the stepfather). S.D. subsequently gave birth to the child in May 2014, and a paternity test determined that A.V. is the child's biological father.
¶4 Less than one week after the child's birth, A.V. was arrested and taken into custody for possession of child pornography. In November 2015, A.V. was convicted of nine counts of possession of child pornography and is currently serving a sentence of eight years of initial confinement and eight years of extended supervision. He has remained in custody since his arrest.
¶5 In June 2017, S.D. filed a petition to terminate A.V.'s parental rights to the child. In her petition, S.D. alleged two separate grounds for termination: "abandonment" under WIS. STAT. § 48.415(1), and "failure to assume parental responsibility" under § 48.415(6). A.V. contested the petition, and the circuit court held a fact-finding, or "grounds" hearing, at which it heard testimony from S.D., A.V., and A.V.'s mother. At the conclusion of the hearing, the court found that S.D. had established both grounds for termination of A.V.'s parental rights.
¶6 Immediately after the circuit court found that the grounds for termination had been proven, S.D. submitted a proposed order terminating A.V.'s parental rights. The court signed the order and indicated that "the parental rights of [A.V.] at this time are being terminated."
¶7 A.V. filed a motion for post-disposition relief. In the motion, he argued that he had received ineffective assistance of counsel at the grounds hearing and that the circuit court erroneously terminated his parental rights without holding a separate dispositional hearing on the issue of the child's best interests as required under WIS. STAT. § 48.427. The court held a hearing on the motion for post-disposition relief, at which it heard testimony from A.V., S.D., and A.V.'s trial counsel. The court determined that A.V.'s trial counsel had not been ineffective at the grounds hearing. The court agreed with A.V. that a separate dispositional hearing was necessary, but did not order or conduct such a hearing because, at that point, the court of appeals had obtained jurisdiction over the appeal.[2] The circuit court then entered an order denying A.V.'s motion for post-disposition relief. A.V. appeals.
DISCUSSION
¶8 Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights. Sheboygan Cty. DHHS v. Julie A.B. , 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. The purpose of the first, or "grounds" phase is to determine whether one or more of the statutory grounds listed in WIS. STAT. § 48.415 for the termination of parental rights is present. WIS. STAT. § 48.424(1)(a) ; see also Steven V. v. Kelley H. , 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856 ("In the first, or 'grounds' phase of the proceeding, the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist."). The parent's rights are paramount during the grounds phase. Evelyn C.R. v. Tykila S. , 2001 WI 110, ¶22, 246 Wis. 2d 1, 629 N.W.2d 768. If the court finds that grounds for the termination of parental rights are proven, the court shall find the parent unfit. Tammy W-G. v. Jacob T. , 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854 ; WIS. STAT. § 48.424(4).
¶9 The second phase, the dispositional hearing, "occurs only after the fact finder finds a WIS. STAT. § 48.415 ground has been proved and the court has made a finding of unfitness. In this step, the best interest of the child is the 'prevailing factor.' " Tammy W-G , 333 Wis. 2d 273, ¶19 (quoted source omitted). During this phase of the proceedings "the court is called upon to decide whether it is in the best interest of the child that the parent's rights be permanently extinguished." Steven V. , 271 Wis. 2d 1, ¶24; see also WIS. STAT. § 48.426(2). Although the parent may still participate in the disposition phase (through the presentation of evidence and argument), the circuit court does not revisit the finding of parental unfitness. State v. C.L.K. , 2019 WI 14, ¶3, --- Wis. 2d ----, --- N.W.2d ---- (Nos. 2017AP1413, 2017AP1414 ).
¶10 This appeal concerns both stages of the termination of parental rights procedure. As stated in the opening paragraph, A.V. makes two arguments on appeal: (1) he received ineffective assistance of counsel at the grounds hearing; and (2) the circuit court erred by entering an order terminating his parental rights without first conducting a dispositional hearing to determine whether the termination is in the child's best interests. As a result, he argues, the order terminating his parental rights should be reversed, and the case remanded for both a new grounds hearing and a dispositional hearing. I address each argument in turn.
I. The Grounds Hearing
¶11 A.V. argues that he received ineffective assistance of counsel at the grounds hearing. I first review the applicable law and then address the details of A.V.'s ineffectiveness of counsel argument.
A. Applicable Law as to Ineffectiveness of Counsel
¶12 A parent involved in an involuntary termination of parental rights proceeding has a statutory right to be represented by counsel. WIS. STAT. § 48.23(2). The statutory right to counsel includes the right to receive the effective assistance of counsel. Oneida Cty. DSS v. Nicole W. , 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652. An ineffective assistance of counsel claim in a termination of parental rights proceeding is analyzed under the two-pronged test set forth in Strickland v. Washington , 466 U.S. 668 (1984). Nicole W. , 299 Wis. 2d 637, ¶33. Under that standard, the party alleging ineffective assistance has the burden to prove both that his or her counsel's performance was deficient and that he or she was prejudiced by the deficient performance. Strickland , 466 U.S. at 687.
¶13 To establish the first prong, deficient performance, the party must show that the representation was "outside the wide range of professionally competent assistance." Id. at 690. Reviewing courts are highly deferential to strategic decisions made by counsel and should make "every effort ... to evaluate the conduct from counsel's perspective at the time." Id. at 689. Moreover, the law does not require counsel to make every conceivable argument in support of the client. Id. Rather, counsel should structure the case around strategic decisions rationally based on the facts of the case. Id.
¶14 To establish the second prong, prejudice, the party must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
¶15 If the court concludes that the party has not proved one prong, it need not address the other. Strickland , 466 U.S. at 697 ; State v. Nielsen , 2001 WI App 192, ¶12, 247 Wis. 2d 466, 634 N.W.2d 325. ("there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the [party] makes an insufficient showing on one").
¶16 Whether counsel's actions constitute ineffective assistance presents a mixed question of fact and law. State v. Pitsch , 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). This court will not reverse the circuit court's factual findings unless they are clearly erroneous. Id. at 634. However, whether counsel's behavior was deficient and whether it was prejudicial to the party are questions of law which this court reviews de novo. Id.
B. A.V.'s Ineffectiveness of Counsel Arguments
¶17 Here, A.V. argues that his counsel was ineffective by: (1) failing to introduce into evidence documents from A.V. and S.D.'s divorce proceedings, which he asserts show both S.D.'s antipathy to his contacting the child and that he did seek physical placement of the child; (2) failing to object to evidence of A.V.'s convictions of possessing child pornography, or of the behavior underlying those convictions; (3) failing to object to S.D.'s testimony that the child had a close relationship with the stepfather; and (4) failing to object to certain statements made by S.D.'s counsel and by the guardian ad litem during closing arguments. I address and reject each argument in turn.
1. Failure to Introduce the Divorce Documents
a. Documents Related to a Request to Change the Child's Birth Certificate
¶18 A.V. and S.D. filed a joint petition for divorce in April 2014, one month before the child's birth. The child's birth certificate listed A.V. as the biological father. In July 2014, S.D. sent a letter to the divorce court requesting that the stepfather's name replace A.V.'s name on the birth certificate. Accompanying the letter was a statement that read, "I, [A.V.], do agree that [the child] is not possibly mine. I furthermore agree that ... at the time of conception, I was not involved with [S.D.]."[3]
¶19 A.V. contends that his counsel was ineffective for not introducing the letter and accompanying statement at the grounds hearing. Specifically, A.V. argues that the two documents would have supported his theory that he had "good cause" for not making any attempt to contact or assume parental responsibilities for the child because of S.D.'s antipathy to his doing so. See WIS. STAT. § 48.415(1)(c) ("Abandonment is not established ... if the parent had good cause for having failed to [visit or communicate] with the child"); see also Tammy W-G , 333 Wis. 2d 273, ¶3 (to determine whether a parent has failed to assume parental responsibility, courts apply a totality-of-the-circumstances test that "may include the reasons why a parent was not caring for or supporting her child"). According to A.V., the documents, had they been introduced, would have supported his argument that S.D. had "impeded his efforts to have contact with" the child because they show that S.D. was "highly motivated to cut [A.V.] from [the child's] life." A.V. contends that the two documents would have supported A.V.'s testimony that S.D. told him he was not the child's father, and so would have highlighted S.D.'s "determination" to prevent A.V. from contacting the child.
¶20 However, A.V. fails to show that he was prejudiced by counsel's failure to introduce the two documents for at least two reasons. First, the record of the grounds hearing is replete with evidence that S.D. did not want A.V. to be involved in the child's life. For example, S.D. herself testified that she did not want A.V. "around [her] child." Evidence was also presented that S.D. had returned a gift sent to the child by A.V.'s mother, and that she had threatened A.V.'s mother with legal action upon any further attempts to contact the child. S.D. testified that she had made that threat because she believed A.V.'s mother knew that A.V. had a history of behavior related to his criminal convictions and did nothing about it. She testified that she did not want her child "in an environment like that." In light of this evidence that S.D. did not want the child to interact with A.V. or his family, additional evidence that S.D. had stated in July 2014 that A.V. was not the child's father would only at best reinforce the inference from the evidence already presented that S.D. did not want A.V. involved in the child's life.
¶21 Therefore, introduction of the two divorce documents for the purpose of showing S.D.'s antipathy towards A.V. would therefore have been cumulative. Accordingly, A.V. fails to show that counsel's failure to introduce that evidence prejudiced him. See State v. Trawitzki , 2001 WI 77, ¶¶43-45, 244 Wis. 2d 523, 628 N.W.2d 801 (the failure to put on cumulative evidence in the form of prior convictions of witnesses did not create a reasonable probability of a different outcome).
¶22 Second, at the grounds hearing, the testimony of both S.D. and A.V. established that A.V. had never made any attempt to contact the child or to inquire about the child with a third party. The testimony was unequivocal that A.V. never made any effort to establish any sort of relationship with the child. Based on that evidence, the circuit court determined that A.V. had not demonstrated "good cause" for not contacting or forging a relationship with the child, regardless of whatever antipathy S.D. had expressed. Thus, further evidence of S.D.'s antipathy towards A.V. or of her desire that he not be a part of the child's life would not have altered the court's determination that A.V. had not shown good cause.
¶23 In sum, because A.V. fails to show any reasonable probability that the two documents would have altered the outcome of the proceeding, he fails to show he was prejudiced by counsel's failure to introduce them. See Strickland , 466 U.S. at 694.[4]
b. Transcript on Placement
¶24 A.V. contends that his counsel was deficient for failing to introduce into evidence a transcript from the divorce proceedings concerning the physical placement of the child. He contends that the transcript is evidence that he "sough[t] physical placement of [the child] during the divorce proceedings," and that the transcript would have contradicted S.D.'s testimony that he had not sought physical placement. This argument fails because the transcript does not in fact constitute evidence that A.V. sought physical placement of the child during the divorce.
¶25 A.V. cites the following passage from the transcript:
[THE COURT]: In terms of secondary placement with [A.V.], I think what we've talked about is that it's just going to be held open depending on what transpires in his criminal case, and then I guess he'll have decisions to make as to what relationship he wants with his child.
Consistent with this passage, the marital settlement agreement, which was introduced at the grounds hearing, contains a handwritten note by the judge that placement was being "kept open."
¶26 By its terms, the transcript does not indicate that A.V. had requested physical placement of M.D. On the contrary, it, like the marital settlement agreement introduced at the hearing, indicates only that the question of physical placement was being "held open." Both S.D. and A.V. testified at the post-disposition hearing that the divorce court, not A.V., had been responsible for keeping the question of physical placement open. S.D. also testified that A.V. never expressed an interest in having physical placement during the divorce. The transcript therefore supports neither the assertion that A.V. sought physical placement nor the argument that A.V. was prejudiced by counsel's failure to introduce it.
2. Evidence of A.V.'s Conviction
¶27 Prior to the grounds hearing, S.D. moved to allow the admission of A.V.'s judgment of conviction for possession of child pornography. A.V. neither responded to the motion, nor objected at the hearing when S.D. introduced the judgment of conviction and asked A.V. a series of graphic questions concerning the content of the photos A.V. had been convicted of possessing. A.V. fails to show that his counsel was deficient for failing to object.
¶28 At the post-disposition hearing, A.V.'s trial counsel testified that her trial strategy was to use the fact of A.V.'s conviction to explain why he had neither been present with the child nor made any attempt to contact the child. Further, counsel testified that her strategy was to use the specific fact that A.V. had been convicted of possession of child pornography to explain that he was required to undergo certain treatment and complete a program before being allowed to see the child. Counsel's argument at the grounds hearing revolved around those facts, and amounted to an argument that A.V., by attempting to complete the required programs, was in fact taking steps towards being able to meet and interact with the child. A.V.'s counsel also testified that she did not object to the description of the content of the photos because the circuit court already knew that A.V. had been convicted of possession of child pornography.
¶29 "An appellate court will not second-guess a trial attorney's 'considered selection of trial tactics or the exercise of a professional judgment in the face of alternatives that have been weighed by trial counsel.' A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel." State v. Elm , 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996) (citations and quoted sources omitted). Here, A.V.'s counsel articulated a rational trial strategy that depended upon the admission both of A.V.'s conviction and of the details of that conviction. A.V. has not developed any argument that this strategy was "outside the wide range of professionally competent assistance," Strickland , 466 U.S. at 690, or that the strategy was based on an inaccurate view of the facts or the law.[5] Accordingly, A.V. fails to show that his trial counsel was deficient for failing to object to evidence of the circumstances of his conviction.
3. Evidence of the Child's Relationship with the Stepfather
¶30 During her testimony at the grounds hearing, S.D. made multiple statements concerning the child's positive relationship with the stepfather. A.V. contends that his counsel was deficient by not objecting to this testimony, which he asserts was irrelevant at the grounds stage of the proceeding. He further contends that his counsel's failure to object was prejudicial because it "confused the issue" by inviting the circuit court to consider the child's best interests at the grounds hearing.
¶31 However, A.V. fails to establish that S.D.'s testimony concerning the child's relationship with the stepfather was prejudicial. A.V. points to nothing in the record suggesting that the circuit court relied upon that portion of S.D.'s testimony in determining that the grounds for termination had been proven. Nor does A.V. explain how, without that testimony, the analysis of whether the grounds for termination existed would have been different. In short, A.V. develops no argument that, without S.D.'s testimony concerning the child and the stepfather, there is a reasonable probability that "the result of the proceeding would have been different." Id. at 694.
4. Closing Arguments
¶32 Finally, A.V. contends that his counsel was deficient by failing to object to portions of the closing arguments made by S.D. and by the guardian ad litem. First, he points to a statement by S.D.'s counsel to the effect that the law did not allow the circuit court to consider any possible "roadblocks" that S.D. may have put in the way of A.V.'s efforts to contact the child. A.V. argues that this statement was incorrect, because the law does permit the court to consider S.D.'s behavior when deciding whether A.V. had "good cause" for not contacting the child. See WIS. STAT. § 48.415(1)(c) ("Abandonment is not established ... if the parent had good cause for having failed to [visit or communicate] with the child"); see also WIS JI- CHILDREN 314 (to determine whether there is good cause, it is appropriate to consider "whether the person(s) with physical custody of [the child] prevented or interfered with efforts by [the parent] to visit or communicate with [the child].").
¶33 However, A.V. develops no argument that he was prejudiced by his counsel's failure to object to this statement in closing argument. Nor can he-the circuit court expressly considered S.D.'s actions with respect to A.V.'s ability to contact the child and determined that they did not rise to the level of "good cause" for his failure to contact the child. That is, the court expressly considered whether S.D. had imposed roadblocks, despite S.D.'s closing argument that it should not. Thus, the court plainly did not rely upon S.D.'s argument that her "roadblocks" could not be considered in evaluating the existence of good cause. Accordingly, A.V. fails to show a reasonable probability that the circuit court's analysis would have been any different had counsel objected.
¶34 Second, A.V. contends that the guardian ad litem's closing argument was inappropriate at the grounds stage because it centered on the child's best interests. However, A.V. develops no argument that he was prejudiced by his counsel's failure to object to the guardian ad litem's closing argument. That is, he does not explain how, if such an objection had been made, there is a reasonable probability that the objection would have made a significant difference to the analysis or determination made by the circuit court. Accordingly, I do not consider this argument further. See Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc. , 2004 WI App 134, ¶16, 275 Wis. 2d 349, 685 N.W.2d 564 ("Ordinarily, [this court] will not address undeveloped arguments....").
¶35 In sum, A.V. fails to show that he received ineffective assistance of counsel at the grounds hearing.
II. The Dispositional Hearing
¶36 A.V. argues that the order terminating his parental rights cannot stand in light of the fact that the circuit court did not hold a dispositional hearing to determine the child's best interests. In particular, A.V. argues that a circuit court has a statutory obligation under WIS. STAT. § 48.427 to hold a separate dispositional hearing on the issue of whether the best interests of the child would be served by the termination of parental rights. See Sheboygan Cty. DHHS v. Julie A.B. , 2002 WI 95, ¶28, 255 Wis. 2d 170, 648 N.W.2d 402 (citing § 48.427 for the proposition that "[w]hen the fact-finding step has been completed and the court has made a finding of unfitness, the proceeding moves to the second step, the dispositional hearing."). He also argues that, because the court did not hold a dispositional hearing, it never made any finding that termination would serve the child's best interests as required by WIS. STAT. § 48.426(2), nor did it consider the mandatory factors listed in § 48.426(3), which must be considered when determining a child's best interests. See id. , ¶29. (the circuit court "shall consider the six factors set out in § 48.426(3)"); see also § 48.426(2) ("The best interests of the child shall be the prevailing factor ... in determining the disposition ...."). As a result, he argues that the order terminating his parental rights must be reversed, and this case remanded to the circuit court for it to conduct a dispositional hearing.
¶37 In her response brief, S.D. agrees that the law requires a separate dispositional hearing before parental rights may be terminated. She also agrees that a dispositional hearing did not occur in this case, and that as a result, the appropriate remedy is to reverse the order terminating A.V.'s parental rights and to remand for a dispositional hearing.
¶38 In light of the agreement between the parties, I reversee the order terminating A.V.'s parental rights and remand to the circuit court for it to conduct a dispositional hearing in accordance with the requirements of WIS. STAT. §§ 48.424(4), 48.426, and 48.427.
CONCLUSION
¶39 For the reasons stated above, I reverse the order terminating A.V.'s parental rights and remand to the circuit court for it to conduct a dispositional hearing.
By the Court. -Order reversed and cause remanded.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

A.V. filed a notice of intent to pursue post-disposition relief in March 2018 and filed a notice of appeal in June 2018. Following the notice of appeal, this court granted A.V.'s motion to remand to the circuit court for the purpose of pursuing post-disposition relief, but retained jurisdiction over the appeal. The circuit court conducted the hearing on A.V.'s motion for post-disposition relief pursuant to that remand.

At the post-disposition hearing, S.D. testified that A.V. had signed the statement in jail and mailed it to her. A.V. testified that he had not signed the statement. The circuit court made no findings concerning whether A.V. had in fact signed the statement.

A.V. also contends that the documents, had they been introduced, would have impeached S.D. by contradicting her testimony that she had told him she was unsure who the child's father was until the paternity test in November 2014. However, A.V. does not explain why diminishing S.D.'s credibility would have any bearing on the circuit court's determination that he failed to show good cause based on his own failure to contact or establish a relationship with the child.

A.V. does argue that his trial counsel's decision not to object was based on a legal mistake-namely, that the evidence would be admitted despite her objection-but A.V. does not address the fact that his counsel specifically wanted the evidence admitted as a part of her trial strategy.
Relatedly, A.V. suggests that his decision to waive a jury trial was based on his counsel's advice that the evidence of his conviction would come in despite her objection, and that therefore his counsel's mistaken view of the law prejudiced him by prompting him to forego a jury. However, counsel testified that her advice to waive a jury trial was based on her strategic assessment that a jury would not respond well to a description of A.V.'s conditions in prison, which she intended to rely on in her argument. Her advice to waive the jury trial was therefore well within her strategic prerogative.