COURT OF APPEALS
DECISION
DATED AND FILED

April 23, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2019AP471**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CV82

**IN COURT OF APPEALS
DISTRICT IV**

OASIS IRRIGATION, INC.,

    PLAINTIFF-RESPONDENT,

 V.

BRUCHS FARMS, INC.,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Marquette County: BERNARD N. BULT, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Blanchard, Graham, and Nashold, JJ.

¶1    GRAHAM, J.  This dispute arises from the purchase by Bruchs Farms, Inc., of two irrigation systems from Oasis Irrigation, Inc., and Oasis's installation of those systems in Bruchs Farms' fields.  After Bruchs Farms refused

to pay Oasis's invoices in full, Oasis brought this action to recover the outstanding balances. Following a bench trial, the circuit court entered judgment in Oasis' favor. It determined that there was no "meeting of the minds" and therefore no contracts between the parties, and that Oasis was entitled to recover the remaining balances as damages for unjust enrichment. For the reasons below, we reverse in part, affirm in part, and remand for a recalculation of damages in light of our conclusions.

## BACKGROUND

¶2 Starting in 2013, Bruchs Farms and Oasis negotiated for the sale and installation of two irrigation systems, which we refer to throughout this opinion as Project 1 and Project 2. Randy Bruchs, owner of Bruchs Farms,[1] and John Roesener, salesperson for Oasis, were the only people who were directly involved in the negotiations over either project. Although portions of the negotiation and work related to the two projects overlap chronologically, we discuss each project separately for ease of reading. We provide a brief overview of the projects here, and we set forth the facts in greater detail in the discussion section below.

¶3 Bruchs and Roesener first discussed Project 1, which involved the sale and installation of a new irrigation system that would "fit [Bruchs Farms'] field." Roesener prepared a written quotation, which included all parts and labor. Bruchs accepted the quotation and made an initial payment toward the quoted price. Once the installation was complete, it became apparent that Oasis's measurements had been inaccurate and that the system was too short to irrigate as

---

[1] We refer to the business, which is the defendant in this action, as "Bruchs Farms." We refer to Randy Bruchs, who is not a party, as "Bruchs."

much of the field as Bruchs and Roesener had anticipated. Oasis lengthened the system, and it then billed Bruchs Farms for the cost of parts and labor to complete the extension. Bruchs refused to pay to lengthen the system, contending that the costs to do so should have been included in the original price.

¶4 Several months later, Bruchs and Roesener discussed Project 2, which involved the sale and installation of used irrigation equipment. The parties agreed that the equipment would be split into two systems and installed on two different fields. Roesener provided a written quotation, which Bruchs signed and later paid in full, that included the cost of the used equipment and the cost of transporting it to Bruchs Farms' property. Roesener also provided an oral estimate relating to some of the installation costs, but these discussions were never reduced to writing and the parties dispute what exactly was said. After Oasis installed the systems, Bruchs refused to pay some of the Project 2 invoices on the grounds that Oasis charged more to make the systems operational than Bruchs believed the parties had agreed to.

¶5 Bruchs Farms eventually made a final payment that was not specifically designated toward either project, and that fell short of satisfying the outstanding balance on Oasis's invoices. Oasis commenced this action, seeking to recover the unpaid balances for both projects on alternative theories of breach of contract, unjust enrichment, and quantum meruit.

¶6 After a bench trial, the circuit court ruled in favor of Oasis. The court determined that the parties did not reach a "meeting of the minds" as to the essential terms of the agreement for either project. In the absence of contracts, the court determined that "[i]t would be inequitable for Bruchs Farms to be permitted to retain the benefit of the goods and services without payment of the market

value." The court appeared to base this determination on Bruchs' admission that his business was benefitting from the irrigation systems Oasis had installed. The court awarded unjust enrichment damages for both projects,[2] and Bruchs Farms appeals.

## DISCUSSION

¶7      The resolution of this appeal turns on whether Bruchs Farms and Oasis entered into contracts for Project 1 and Project 2. This is because unjust enrichment is an equitable doctrine that does not apply when parties have entered into a contract. *Greenlee v. Rainbow Auction/Realty Co.*, 202 Wis. 2d 653, 671, 553 N.W.2d 257 (Ct. App. 1996). If the parties did enter into a contract for either project, the circuit court should not have awarded damages for unjust enrichment—it should have simply enforced the contract instead. If on the other hand the parties did not enter into a contract for either of the projects, unjust enrichment damages could be an available remedy.

¶8      In Section I, we set forth the pertinent principles of contract law and address the parties' arguments about the legal standards that apply to this case. In Section II, we apply these standards to the evidence introduced at trial, and we conclude that the parties entered into a contract for Project 1 but not for Project 2. In Section III, we provide the circuit court with instructions for recalculating damages on remand.

---

[2] The circuit court rejected Oasis's argument that it was entitled to prejudgment interest, and Oasis does not appeal that determination.

# I. Legal Standards

¶9      As discussed above, the circuit court determined that there was no "meeting of the minds," and therefore no contract, for either project.  Bruchs Farms asserts that this determination is erroneous and that the parties' "writings and conduct" established contracts for both projects.  The parties dispute, among other things, whether application of the Wisconsin Uniform Commercial Code (UCC) would affect the result in this case and the appropriate standard of review.  We begin this section by summarizing the law regarding definiteness—a contract formation requirement that is sometimes characterized as a "meeting of the minds"—which was the basis of the circuit court's decision.  We then evaluate the parties' arguments about the UCC and the standard of review.

## A. The Definiteness Requirement

¶10     Under both the common law and the UCC,[3] an agreement is not a contract if it does not satisfy the "threshold" common law requirement of "intent to contract."  *Novelly Oil Co. v. Mathy Const. Co.*, 147 Wis. 2d 613, 616, 433 N.W.2d 628 (Ct. App. 1988).  This requirement is commonly referred to in Wisconsin as the "definiteness requirement," and it is satisfied when there is a "meeting of the minds" such that the parties "agree on the essential terms and conditions."  *Headstart Bldg., LLC v. National Centers for Learning Excellence, Inc.*, 2017 WI App 81, ¶19, 379 Wis. 2d 346, 905 N.W.2d. 147.  When, by contrast, there is "vagueness or indefiniteness concerning an essential term," there

---

[3] Even when the UCC governs a particular transaction, common law contract principles apply to the extent that they are not displaced by particular UCC provisions.  *Christensen v. Equity Co-op. Livestock Sale Ass'n*, 134 Wis. 2d 300, 304, 396 N.W.2d 762 (Ct. App. 1986).

has not been a "meeting of the minds" and the definiteness requirement is not satisfied. *Id.*, ¶16. "If parties evidently intended to enter a contract," a court "should not frustrate their intentions," and should "attach a sufficiently definite meaning to the contract language if possible." *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 179, 557 N.W.2d 67 (1996). Definiteness is "judged by an objective standard, looking to the express words the parties used …." *Id.* at 178.

¶11     In this case, the circuit court used the term "meeting of the minds" to refer to this concept, and the parties consistently use that same term throughout their briefing. But use of the term "meeting of the minds" has been criticized as potentially misleading. *See id.* at 179 n.21 ("It has been suggested that the term 'meeting of the minds' should be abandoned, due to the misunderstanding it frequently causes."). The term may lead to the mistaken assumption that the parties must "subjectively agree to the same interpretation" of the agreement, even though definiteness is an objective inquiry that looks to the parties' representations, rather than to their beliefs. *Id.* at 179. For clarity and consistency, we use the terms "definite" and "definiteness requirement" to refer to this concept throughout our discussion, except when directly quoting the parties or the court.

### B.  Bruchs Farms' Argument Regarding the UCC

¶12     Bruchs Farms argues that the circuit court should have applied the provisions of the UCC rather than the common law to determine whether there

were contracts between the parties. *See* WIS. STAT. § 402.102 (2017-18)[4] (providing that the UCC applies to "transactions in goods"). Although Bruchs Farms raised this issue in its post-trial brief, the court did not address whether the UCC governs either project. Bruchs Farms' argument centers around WIS. STAT. § 402.207(3), a provision of the UCC that allows a court to consider "[c]onduct by both parties which recognizes the existence of a contract." Bruchs Farms contends that, if the circuit court had applied the UCC and considered the parties' conduct, it would have determined that their agreements satisfied the definiteness requirement for contracts.

¶13　Bruchs Farms is correct that the UCC allows a court to consider "conduct of the parties" in determining whether an agreement satisfies the definiteness requirement. However, the same law also applies under the common law of contracts.[5] Because the court may look to the parties' conduct under the UCC and the common law alike, Bruchs Farms has not shown us that applying the UCC could change the result in this case. Therefore, we need not determine whether the UCC applies to Project 1 or Project 2. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (appellate courts need not address non-dispositive issues).

---

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[5] *See Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc.*, 2004 WI App 134, ¶10, 275 Wis. 2d 349, 685 N.W.2d 564 (applying the common law and asserting that a court "may discern a contract where the parties' conduct evidences sufficient definiteness of an intent to contract, even if an essential term is left vague or indefinite"); *see also Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶25, 291 Wis. 2d 393, 717 N.W.2d 58, *opinion clarified on denial of reconsideration*, 2007 WI 23, ¶25, 299 Wis. 2d 174, 727 N.W.2d 502 (applying the common law and determining that a court may look to the parties' "subsequent actions" to "clarify the parties' intent at the time they entered into the contract").

### C. The Parties' Arguments Regarding the Standard of Review

¶14 The parties also dispute the appropriate standard of review. Bruchs Farms asserts that this case presents questions of law, and Oasis asserts that whether the parties' agreement satisfied the definiteness requirement is a question of fact. Neither party develops an argument as to why its proposed standard is correct, and our supreme court has explained that definiteness is sometimes decided by the court as a matter of law, and on other occasions by the fact-finder as a question of fact. *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d at 178.

¶15 Where an agreement is partly oral, determining definiteness often involves an assessment of the weight and credibility of witness testimony, and the fact-finder (here the circuit court) is the "ultimate arbiter" of such matters. *See Lessor v. Wangelin*, 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998); *see also Management Computer Servs.*, 206 Wis. 2d at 177 (when a court considers "extrinsic evidence" to resolve ambiguity in an agreement, this involves questions of fact). In this case, the agreements about Project 1 and Project 2 were partly written and partly oral, and witnesses from both sides testified about the oral agreements they had reached. Under these circumstances, we apply the rule as stated in *Management Computer Services* and conclude that the circuit court's definiteness determination is a finding of fact, which we will not upset on appeal unless it is clearly erroneous. A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence. *Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 676, 273 N.W.2d 279 (1979). Under this standard, the court's finding of fact will be affirmed "as long as the evidence would permit a reasonable person to make the same finding," even though the evidence would

also permit a contrary finding. ***Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

## II. Application

¶16     We now consider the circuit court's determination that Oasis and Bruchs Farms did not, to use the court's terminology, reach a "meeting of the minds" regarding either project in light of the evidence introduced at trial. We apply Wisconsin law on definiteness to each project in turn, and we evaluate the proper remedy in light of our conclusions.

## A. Project 1

¶17     For the reasons we now explain, we conclude that the parties' words and conduct related to Project 1 evinced an agreement that was sufficiently definite to form a binding contract. Although the parties dispute many facts related to Project 1, the trial testimony shows that the following essential facts were undisputed.

¶18     As mentioned above, Bruchs and Roesener were the sole participants in the negotiations, and both testified that Bruchs told Roesener that he wanted a system that would "fit the field." According to Roesener, he understood that to mean the system should be capable of irrigating a circle that reached the edges of the field, missing only the corners. Bruchs and Roesener both testified that it was Oasis's responsibility to measure the field and determine the length of the "overhang."[6]  Both testified that, based on measurements by Oasis which later

_____

[6] An overhang increases the radius of an irrigation system, expanding the area of the circle that can be irrigated.

9

proved inaccurate, Roesener determined that a 33-foot overhang would be required. He provided a written quotation for a system with a 33-foot overhang for $85,998.05, which included all parts and labor. Bruchs agreed to these terms. After installation, it became apparent that the system was too short, and Roesener told Bruchs that Oasis would "make it right." Oasis replaced the 33-foot overhang with one of the correct length and charged Bruchs Farms an additional $8,661.99 to do so. Bruchs made an initial payment toward Project 1, but he refused to pay the cost of replacing the overhang.

¶19     Although the circuit court found that there was no "meeting of the minds" regarding Project 1, it did not make any specific findings of historical fact to support this determination. And the undisputed testimony set forth above conclusively demonstrates that the parties agreed to all essential terms for Project 1. The undisputed testimony shows that Oasis agreed to provide and install an irrigation system for a specific price and that Bruchs Farms agreed to pay that price. The undisputed testimony also shows that the parties agreed about the reach of the system—as Oasis's agent, Roesener represented that the system would "fit the field" based upon Oasis's measurements. Under common law contract principles, Roesener's representation is a warranty, which is "an assurance by one party to a contract of the existence of a fact upon which the other party may rely." *Woodward Commc'ns, Inc. v. Shockley Commc'ns Corp.*, 2001 WI App 30, ¶14, 240 Wis. 2d 492, 622 N.W.2d 756 (applying common law principles).[7]  Stated

---

[7] Roesener's representation would also be an express warranty under the UCC. *See* WIS. STAT. § 402.313(1)(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."). An affirmation is "part of the basis of the bargain" when it is "a factor in the purchase." *Ewers v. Eisenzopf*, 88 Wis. 2d 482, 488, 276 N.W.2d 802 (1979). According to Bruchs' undisputed testimony, Roesener's representation that the system would "fit the field" was a factor in his decision to purchase the system.

differently, there is no "vagueness or indefiniteness" about the parties' agreement that Bruchs Farms would receive an irrigation system that "fit the field" for $85,998.05.

¶20    Oasis argues that the parties' agreement was indefinite because a term used by the parties is ambiguous. Specifically, it argues that the term "fit the field" does not "identify with any specificity any dimensions of what the parties were agreeing to." Oasis contends that the term "fit the field" could perhaps have meant that the system would fit entirely "within" the field, and that the 33-foot overhang did in fact fit entirely within the field.

¶21    Oasis's argument fails for two reasons. First, even if one possible interpretation of the term "fit the field" is "fit within the field," there is no evidence in the record that would credibly suggest that either of the parties ascribed that meaning to the term. A court may consider extrinsic evidence such as the parties' negotiations in resolving contract ambiguity, *Betz v. Diamond Jim's Auto Sales*, 2014 WI 66, ¶69, 355 Wis. 2d 301, 849 N.W.2d 292, and here, the undisputed evidence shows that Roesener and Bruchs both used the term "fit the field" during the negotiations to mean that the irrigation system would reach the boundaries of the field, missing only the corners.[8]

---

[8] Roesener's affidavit, entered into evidence, avers that he used the term "fit the field" to mean "a system that would water the most acres in that field, knowing we could not water the corners." Then at trial, Roesener testified that he knew the system "needed to fit to the end of the field," and Oasis's master electrician also testified that he knew Bruchs Farms wanted a system that "would water all of the way to the boundaries of [its] field." Bruchs testified that Roesener told him a system with a 33-foot overhang would "cover the most amount of the field possible" and that Roesener showed him diagrams confirming that the system would "cover the field."

¶22    Second, even if the term "fit the field" were ambiguous, this would not, without more, render the contract indefinite. "A contract can be ambiguous without being indefinite," *Ehlinger v. Hauser*, 2010 WI 54, ¶56, 325 Wis. 2d 287, 785 N.W.2d 328, and only fails for indefiniteness when an essential term is so ambiguous that "'construction becomes futile,'" *Management Computer Servs., Inc.*, 206 Wis. 2d at 180 (quoting *Heyman Cohen & Sons, Inc. v. M. Lurie Woolen Co.*, 232 N.Y. 112, 114, 133 N.E. 370 (1921)). Even assuming that the term "fit the field" is somewhat ambiguous, it is not so ambiguous as to be impossible to construe, as shown above.

¶23    For these reasons, we conclude that the circuit court's finding that there was no "meeting of the minds" for Project 1 is against the great weight and clear preponderance of the evidence, *see Bank of Sun Prairie*, 86 Wis. 2d at 676, and that the parties did enter into a binding contract for Project 1. Having reached these conclusions, we turn to the proper remedy.

¶24    The circuit court ordered damages for Project 1 based on a theory of unjust enrichment. But as mentioned above, unjust enrichment does not apply when there is a contract between the parties. *Greenlee*, 202 Wis. 2d at 671. Because the parties entered into a contract for Project 1, unjust enrichment damages are not available and the circuit court erred by awarding them.

¶25    Oasis appears to advance the alternative argument that it can recover the same damages under the doctrine of quantum meruit, which may support a claim for damages when a party "renders services in addition" to the services contemplated in a contract. *Martineau v. State Conservation Comm'n*, 54 Wis. 2d 76, 81, 194 N.W.2d 664 (1972). According to Oasis, the work it performed to replace the overhang was not contemplated by the parties' contract,

12

and Bruchs Farms should not have assumed it would get that work "for free." But for reasons we have already explained, this work *was* contemplated by the contract—Oasis warranted that the system Bruchs Farms purchased for the contract price would "fit the field." By performing the overhang extension work required to fulfill its warranty, Oasis merely corrected the measuring error that it had made and met the obligations that were contemplated by the contract. Therefore, Oasis cannot recover the cost of replacing the overhang under the doctrine of quantum meruit.

¶26 Accordingly, the circuit court should have determined Oasis's damages for Project 1 based on general contract principles instead of relying on unjust enrichment or any other quasi-contract theory. We reverse and remand for a recalculation of damages, and we provide additional direction for the proceedings on remand in Section III below.

## B. Project 2

¶27 We now turn to the circuit court's finding that, in the words of the court, the parties did not reach a "meeting of the minds" about Project 2. As stated above, Project 2 involved Bruchs Farms' purchase of a used irrigation system, and Oasis's agreement to move the used equipment to Bruchs Farms' property and split it into two different systems that would be installed on two different fields.

¶28 We begin by presenting additional detail about the parties' negotiations. Both Roesener and Bruchs testified that Roesener presented a written, itemized quotation for $39,286, which covered the cost of the used parts and freight, and Bruchs signed the quotation. It is undisputed that Oasis delivered the system and invoiced Bruchs Farms $39,286, which Bruchs Farms paid. Thus,

the evidence at trial shows that the parties agreed on the cost of the used equipment and the cost of moving it to Bruchs Farms' property.

¶29    However, Roesener and Bruchs both testified that, at the time Bruchs signed the quotation for used parts and freight, they both knew that more work beyond that specified in the quotation would be required to split the system and make it operational.  The parties' dispute concerns this additional work, for which Oasis ultimately billed approximately $34,000.[9]  Bruchs Farms refused to pay this price in full, and it argues that the parties reached an oral contract that the additional work would cost between $8,000 and $9,000.  Based on the evidence at trial, which we summarize below, we conclude that the circuit court could have reasonably determined that the parties did not reach a definite agreement about the scope of the work that would happen next or how much it would cost.

¶30    Roesener and Bruchs both testified about the oral discussions regarding additional work that would be needed to make the systems operational.  It is undisputed that Roesener estimated that "wire, pipe, and labor" would be between $8,000 and $9,000.  Roesener testified that this was a "rough quote" and that there was no "right way" for him to provide a firm quotation at that time because Bruchs was not planning to install the equipment right away and "all of the prices are going to be different" by the time it would be installed.  Ultimately, Roesener's estimate for wire, pipe and labor was never reduced to writing, and Bruchs and Roesener both testified that they knew it was only an estimate.

_____

[9] Bruchs Farms asserts that Oasis billed $34,432.68 for the additional work, and Oasis does not dispute that total on appeal.  We express no opinion on the accuracy of Bruchs Farms' calculations.

¶31 Oasis argues, and the circuit court could reasonably have determined, that Bruchs and Roesener also knew that other items, in addition to wire, pipe, and labor, would be necessary to make the system operational. Bruchs Farms appears to dispute this conclusion, and it relies on Roesener's testimony that he told Bruchs that the written quotation for used parts and freight included "everything, except for the wire, pipe, and labor to hook up the system." But Bruchs' own testimony belies the assertion that Roesener represented that the oral estimate included "everything." Bruchs acknowledged that Roesener did not give him a "breakdown of what the total cost would be for the additional work" to complete Project 2. Bruchs also acknowledged that, based on Roesener's representations, he knew that Oasis would also need to install cement pads, which were not contemplated in either the written quotation or the oral estimate. Thus, the record does not compel a finding that Roesener represented that wire, pipes, and labor were the *only* costs not included in the written quotation.

¶32 The circuit court was unable to "attach a sufficiently definite meaning" to the parties' oral discussions, see ***Management Computer Servs.***, 206 Wis. 2d at 179, and we conclude that the court could reasonably have reached this determination. As explained above, the definiteness requirement is not satisfied if there is "vagueness or indefiniteness concerning an essential term." ***Headstart***, 379 Wis. 2d 346, ¶16. Here, the parties agreed to a price for the used parts and freight but knew that more work would be needed, and the record does not compel a finding that the parties reached an agreement on the scope of the additional work

much less a price for that work.[10] Therefore, the circuit court's finding of indefiniteness for Project 2 is not contrary to the great weight and clear preponderance of the evidence.[11] *See Opstein*, 86 Wis. 2d at 676.

¶33 We now turn to the remedy for Project 2. As mentioned above, the circuit court awarded damages for unjust enrichment after determining that there was no contract governing Project 2. Bruchs Farms' sole argument against unjust enrichment is its contention that the parties entered into a contract; it does not contest that the elements of unjust enrichment would otherwise be met based on

---

[10] Price is generally an essential term, and if a contract does not specify a price, it may still be definite "if it specifies 'the manner by which the price is to be ascertained or can be determined.'" *Headstart Bldg., LLC v. National Centers for Learning Excellence, Inc.*, 2017 WI App 81, ¶17, 379 Wis. 2d 346, 905 N.W.2d 147 (quoting *Goerke Motor Co. v. Lonergan*, 236 Wis. 544, 549, 295 N.W. 671 (1941)). Bruchs Farms points to nothing in the record to suggest that the parties specified a method to ascertain a price for the additional work required.

Bruchs Farms argues that Oasis's "delivery of and installation of the system and Bruchs' additional, subsequent payment" shows that the parties formed a contract for Project 2. To be sure, we may look to the parties' conduct to help "cure any indefiniteness as to price," *Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc.*, 2004 WI App 134, ¶15, 275 Wis. 2d 349, 685 N.W.2d 564, but here, the parties' conduct supports the court's indefiniteness finding. Oasis billed for items not included in the written quotation or the oral estimate, consistent with an understanding that Bruchs Farms was responsible for those charges, and Bruchs Farms refused to pay, consistent with the opposite understanding. Accordingly, the parties' conduct does not show that the parties reached a definite agreement on price.

[11] The parties also dispute whether the system was sold "as-is" or included a warranty. Because we affirm the circuit court's finding that the parties' agreement was too indefinite to form a binding contract, we need not determine whether the contract they might have otherwise reached would have included a warranty.

the facts of this case.[12] Because we have rejected the only argument that Bruchs Farms makes to the contrary, we affirm the circuit court's conclusion that Oasis is entitled to damages for unjust enrichment.

### III. Recalculation of Damages on Remand

¶34 As discussed above, the circuit court awarded unjust enrichment damages for both projects. The court should not have awarded unjust enrichment damages for Project 1, and should have awarded breach of contract damages (if any are owed) instead. The court did not err by awarding unjust enrichment damages for Project 2.

¶35 If the record below allowed us to do so, we would remand exclusively for the circuit court's determination of Oasis's contract damages for Project 1, and would affirm the court's determination of unjust enrichment damages for Project 2. Yet we are unable to do so because the circuit court did not separately calculate the damages for each project. Instead, relying on an exhibit introduced by Oasis, the court lumped together the value of both projects and determined that Oasis was entitled to unjust enrichment damages of $37,525.93, which includes damages for both projects. This total cannot be correct because it

---

[12] "Unjust enrichment requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 2017 WI 110, ¶30, 379 Wis. 2d 1, 904 N.W.2d 789. During trial, Bruchs acknowledged that the used equipment had been installed, that the land the equipment is on is more valuable when irrigated, and that Bruchs Farms had seen an increase in the productivity of its crops as a result of having the irrigation equipment functional and operating on the property. Bruchs also acknowledged that he had no evidence to dispute that Oasis billed for the additional services it provided at market value, or that the charges were reasonable based upon irrigation industry standards.

erroneously includes unjust enrichment damages for Project 1.[13] Therefore, we remand to the circuit court for recalculation of Oasis's damages for both projects. On remand, the court should, using its judgment, conduct whatever proceedings and request whatever input it deems necessary to recalculate damages consistent with this opinion.

## CONCLUSION

¶36 In summary, we conclude that the circuit court's finding that the parties' agreements were indefinite was clearly erroneous as to Project 1 but not clearly erroneous as to Project 2. We affirm in part, reverse in part, and remand for recalculation of damages in light of this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

Not recommended for publication in the official reports.

---

[13] To assist the parties and the circuit court following remand, we observe that the explanation and calculation of damages in the circuit court's original decision is difficult for us to follow. It appears that the court was placed in a difficult position by the parties' post-trial submissions, which take an all-or-nothing approach and do not provide a consistent accounting of the amounts that Oasis charged and that Bruchs Farms paid towards each project. Nevertheless, it is not clear that the calculations track the court's findings of fact or the invoices and other evidence introduced at trial. For example, the court made findings of fact that the unjust enrichment value of Project 1 was $85,998.05 (the same amount as the written invoice for Project 1) and that the unjust enrichment value of Project 2 was $39,286 (the same amount as the written quote that covered only used equipment and freight for Project 2), but the court then awarded unjust enrichment damages based on invoices that Oasis sent in excess of these amounts. The court did not explain its calculations except to say that it was relying on an exhibit Oasis introduced summarizing unpaid invoices. The parties make no argument regarding the accuracy of the court's calculations on appeal, and we express no opinion on these issues.